GREGORY J. KOEBEL
ROBERT J. O'CONNOR
O'Connor Berman Dotts & Banes
Second Floor, Marianas Business Plaza
(fka Nauru Building), One Nauru Loop,
P.O. Box 501969
Saipan, MP 96950
670.234.5684
670.234.5683 (facsimile)
Attorneys for Plaintiffs Claston, LLC
   and Sunset Holdings, LLC

**F I L E D**
Clerk
District Court

SEP 1 1 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| CLASTON, LLC by and through<br>SUNSET HOLDINGS, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

No. CV 08 - 0036 - ___

## COMPLAINT FOR READJUSTMENT OF PARTNERSHIP ITEMS
## UNDER INTERNAL REVENUE CODE SECTION 6226

Claston, LLC ("Claston"), by and through its managing member and tax matters partner ("TMP") Sunset Holdings, LLC ("Sunset"), for its Complaint against the United States of America, alleges as follows:

## I.

## PARTIES

1.  Plaintiff Claston is a limited liability company organized under the laws of Delaware. Claston has a principal place of business in the Commonwealth of the Northern Mariana Islands, PMB 29, Box 10001, Saipan, MP 96950.

2.   Sunset is a limited liability company organized under the laws of the Commonwealth of the Northern Mariana Islands with its principal place of business in the Commonwealth of the Northern Mariana Islands, PMB 29, Box 10001, Saipan, MP 96950.

3.   Sunset is now member-managed.  The sole member of Sunset is David Jensen, a resident of the Commonwealth of the Northern Mariana Islands.

4.   Defendant is the United States of America.

## II.

### JURISDICTION AND VENUE

5.   Defendant, through its Maitland, Florida Office of the Internal Revenue Service ("IRS"), an agency of the Department of the Treasury, mailed to Hatteras Capital Management, LLC ("Hatteras"), the former tax matters partner of Claston, a Notice of Final Partnership Administrative Adjustment ("FPAA") dated June 17, 2008, setting forth various erroneous partnership administrative adjustments for Claston's taxable year ending December 31, 2002.  A copy of the FPAA is attached hereto as Exhibit A.

6.   Plaintiff contests each and every adjustment of the FPAA and the conclusory and erroneous rationales employed by Defendant to reach such adjustments.

7.   This Court, therefore, has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1346(e) and 26 U.S.C. § 6226(b)(1).

8.   Venue is in the Northern Mariana Islands Division of this Court pursuant to 28 U.S.C. § 1402(a)(1) and 26 U.S.C. § 6226(b)(1).

9.   Pursuant to 26 U.S.C. § 6226(e)(1), prior to the filing of this Petition, Sunset deposited with the IRS the total amount of $1500.00, representing the good faith estimate of an amount in excess of that by which its tax liability would be increased if the treatment of the "partnership

items" on its tax return was made consistent with the treatment of "partnership items" on the partnership return, as adjusted by the FPAA.    Attached as Exhibit B is a copy of the documentation and check associated with this deposit.

### III.

### PRELIMINARY STATEMENT

10. On June 17, 2008, the IRS mailed the FPAA to Hatteras, which, as the IRS was aware, was no longer Claston's tax matters partner.    In the FPAA, the IRS set forth erroneous partnership adjustments for Claston's taxable year ending on December 31, 2002, and asserted significant penalties.    The IRS justified its adjustment and claims for penalties on a litany of alternative arguments, none of which have merit.    Essentially, the IRS disallowed a claimed loss totaling $6,003,974.00 relating to distressed assets, asserting that the contributions of assets to the partnership should be treated as never having been made because, *inter alia*, the partnership's transactions allegedly lacked economic substance and had had no bona fide business purpose. (Exhibit A).    A copy of Claston's Form 1065 reflecting the claimed loss is attached hereto as Exhibit C. The IRS further claimed that the partnership was a sham, that the partnership was only formed to substantially reduce its partners' tax liabilities, and that all actions by the partnership should be treated as having been undertaken by the partners in their individual capacities. (Exhibit A).  The rationale adopted by the IRS is baseless and the loss claimed by Claston must be validated.

### IV.

### FPAA CONCLUSIONS AND ERRORS

11.  The adjustments for the taxable year 2002, as determined by the IRS, are based upon the following primary errors:

**COMPLAINT FOR READJUSTMENT OF PARTNERSHIP ITEMS**
**UNDER INTERNAL REVENUE CODE SECTION 6226**

a) The IRS erred in its primary position that Claston's acquisition of assets and/or the subsequent sale thereof was not imbued with economic substance or supported by a bona fide business purpose.

b) The IRS erred in its primary position that the distressed assets were not in fact contributed or, if contributed, lacked basis or value or were not property as defined in the Internal Revenue Code ("IRC") § 723.

c) The IRS erred in its primary position that the partnership failed to establish that it incurred its claimed losses and/or incurred any other deductions during the 2002 tax year.

d) The IRS erred in its primary position that the partnership did not establish that its claimed losses were attributable to a transaction entered into for profit, and/or that such losses were not allowable under the IRC, including IRC § 165(c)(2).

12. The IRS erred in its adjustments for the taxable year 2002, as based upon the following alternative positions:

a) The IRS erred in its first alternative position that the partnership and transactions were not entered into to conduct a trade or business and thus were shams devoid of economic substance.

b) The IRS erred in its second alternative position that the contributions of distressed assets to the partnership should be recharacterized under the "substance over form" doctrine as never having been contributed.

c) The IRS erred in its third alternative position that the transactions should be collapsed under the step transaction doctrine.

**COMPLAINT FOR READJUSTMENT OF PARTNERSHIP ITEMS**
**UNDER INTERNAL REVENUE CODE SECTION 6226**

d) The IRS erred in its fourth alternative position that the partnership was formed only for the purpose of substantially reducing its partners' tax liabilities in a manner inconsistent with the intent of IRC subchapter K and Income Tax Regulation § 1.701-2.

e) The IRS erred in its fifth alternative position that, pursuant to IRC section 482, if any portion of the distressed assets is otherwise allowable, any portion of the basis and related loss claimed that relates to the excess of basis over the fair market value at the time such were contributed to the partnership, should be allocated to the contributing partner.

f) The IRS erred in its sixth alternative position that if any portion of any claimed loss attributable to the distressed assets is otherwise allowable, the allocation of any such loss to the U.S. partners is unreasonable, and that portion of such loss should be allocated only to the partners that contributed the distressed assets, in accordance with Tax Regulations § 1.704-3(a)(8) and (10).

g) The IRS erred in its seventh alternative position that Claston did not establish that the character of the claimed losses was ordinary as opposed to capital.

h) The IRS erred in its eighth alternative position that it was not established that the partnership's activity with respect to distressed assets qualifies as an activity of trading personal property for the account of its partners.

13. The IRS erred in its ninth alternative position that any claimed losses attributable to an alleged diminution in the value of Brazilian Real are not allowable under IRC § 988 because it was not established that such losses were incurred during the 2002 tax year.

14. In the FPAA, the IRS erroneously asserted that four types of penalties should be assessed: a gross valuation misstatement penalty; a negligence penalty; a substantial understatement penalty; and a substantial valuation misstatement penalty. In support, the IRS incorrectly asserted that Claston was a tax shelter, that there was no substantial authority for the positions taken by Claston, and that Claston had no reasonable belief that the positions taken were more likely than not the correct treatment of the transactions. In addition, the IRS improperly and incorrectly asserted that Claston and its partners lacked reasonable cause and good faith for any underpayment, and/or negligently disregarded the rules or regulations or otherwise substantially understated and/or grossly misstated tax liabilities.

**V.**

**PLAINTIFF'S CLAIMS**

15. The facts upon which Plaintiff relies as the basis of this proceeding for the 2002 taxable year are as follows:

    a) Claston's acquisition of assets and the subsequent sale thereof was supported by a bona fide business purpose and was imbued with economic substance independent of any tax considerations.

    b) The distressed assets were in fact contributed, and each contributing partner had a basis in such assets, the assets had value, and the assets were property within the meaning of IRC § 723.

    c) The partnership properly allocated its claimed losses for the 2002 tax year.

    d) The losses claimed by the partnership resulted from a transaction entered into for profit.

e) For taxable year 2002, neither Claston nor its transactions were a sham and both should be recognized for federal income tax purposes.

f) The form of the contribution of distressed assets to the partnership matched the substance of the transaction and were correctly reported on Claston's income tax return, Form 1065.

g) The transactions forming the basis of the claimed loss were separate and independent steps that were not focused on a particular end result.

h) The partnership was formed for legitimate purposes and not for the sole purpose of substantially reducing its partners' tax liabilities in a manner inconsistent with the IRC.

i) Any claimed losses for distressed assets were based upon appropriate valuations and correctly attributed to the partnership.

j) The portion of the loss attributed to distressed assets was reasonably allocated to the U.S. partners.

k) The character of the claimed losses was properly treated as ordinary, as opposed to capital.

l) The partnership engaged in the activity of trading personal property for the account of its partners with respect to distressed assets.

m) The losses attributable to the diminution in the value of the distressed assets were incurred during the 2002 tax year.

n) For the 2002 tax year, Claston's positions were correctly reported on its income tax return, Form 1065. Even if Claston's positions were incorrect, Claston is not subject to penalties because there was reasonable cause for the positions taken and

all positions were promulgated in good faith. At all times, Claston reasonably believed that the transactions and positions reported on its income tax return were legitimate and proper under the law.

o) Plaintiff affirmatively alleges that the IRS's determinations in the FPAA are arbitrary and capricious.

p) The IRS failed to timely issue an FPAA to Claston.

q) The IRS failed to appropriately mail the FPAA.

r) The IRS failed to timely mail the FPAA dated June 17, 2008 to Claston's TMP.

s) The Form 872-P obtained by the IRS in September of 2006 is invalid because it was obtained from a party whom the IRS knew or should have known had interests adverse to Plaintiff.

t) At the time the IRS mailed the annexed FPAA dated June 17, 2008 to Hatteras Capital Management, LLC (which the IRS knew, since at least August 2007, was not Claston's TMP), the statute of limitations on assessment of each of the partners' respective income tax liabilities for 2002 had expired.

u) The partnership items on the 2002 tax return for Fulham, L.L.C. are now conclusively established by the filed Form 1065.

16. Plaintiff hereby demands a jury on all issues so triable under the law.

## VI.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. That Plaintiff properly reported its 2002 transactions;

2.      That the adjustments made by Defendant, including penalties, be determined to be without basis in law and fact and therefore incorrect;

3.      That there are no adjustments to be made to Plaintiff's 2002 tax return;

4.      That there is no additional tax owed by Plaintiff or any of its partners;

5.      That Plaintiff is entitled to recover costs and attorney's fees; and

6.      For such other, further, and different relief as the Court may deem proper under the circumstances

Respectfully submitted on this 11th day of September, 2008.

**O'CONNOR BERMAN DOTTS & BANES**

By:_____
        Gregory J. Koebel

*3495-03-080911-PetitionforReadjustmentofPartnershipItems*

**COMPLAINT FOR READJUSTMENT OF PARTNERSHIP ITEMS**
**UNDER INTERNAL REVENUE CODE SECTION 6226**                                    **Page 9 of 9**

**Internal Revenue Service**
**Technical Services**

**Department of the Treasury**

Refer To:
4305/Workman

Taxpayer Identifying Number:

Name of Partnership:
Claston LLC

Date: 6-17-2008

Partnership Identifying Number:
11-3665166

Tax Year Ended:
December 31, 2002

Contact Hours:
8:00am - 3:30pm (M-F)

Hatteras Capital Management LLC
20 Dayton Avenue
Greenwich, Connecticut  06830

Person to Contact:
Mrs. Workman

Contact Telephone Number:
850-942-8920

Date FPAA Mailed to Tax Matters Partner:
6-17-2008

## NOTICE OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENT

The law requires us to send a Notice of Final Partnership Administrative Adjustment (FPAA) to the partnership named above, for the tax year shown above, and to each partner who is entitled to receive this notice.

We are proposing adjustments to the partnership items of the partnership and tax year shown above. We will send the examination report outlining these adjustments to the Tax Matters Partner (TMP) of the partnership. (The TMP is the partner designated by the partnership to deal with the IRS.) He/she is also authorized to act for the partners who are not entitled to receive this notice. Any partner who wants a copy of the examination report should request it from the TMP. If the TMP is unable to provide you with a copy of the examination report, please contact the person named in the heading of this letter.

Taxable Years Ending Before August 6, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease to the tax liability on your individual return. Form 870-P, *Agreement to Assessment and Collection of Deficiency in Tax for Partnership Adjustments*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

Taxable Years Ending After August 5, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease in the tax liability on your individual return. The adjustments may include partnership level determinations regarding penalties and additions to tax that relate to adjustments to partnership items. Form 870-PT, *Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts*, is a summary of the proposed adjustments to the partnership return. IRC section 6651 late filing penalty applies to any late filed returns that are required to report the partnership item adjustments. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

**Letter 1830 (Rev. 7-2007)**
Catalog Number 61242U



You have three options available to you:

**1. If you agree with the adjustments:**

Sign and return the enclosed Form 870-P/Form 870-PT. When you sign Form 870-P/Form 870-PT, you are agreeing to pay any additional tax and interest resulting from the adjustments to the partnership return. For tax years ending after August 5, 1997, you are also agreeing to any partnership level determination as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items, if any. In addition, you are waiving your rights to participate in any administrative or judicial proceeding affecting partnership items and in partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items for the tax year in question. This is a binding settlement only if you sign and return Form 870-P/Form 870-PT and we sign on behalf of the Commissioner of Internal Revenue Service. When we sign the agreement form, the one-year extension of the period of limitations on assessments will begin under Internal Revenue Code section 6229(f). Once the agreement is signed by both parties, you may not file a claim to change the items in question or claim a refund/credit based on a readjustment.

Note: If you are the TMP of the partnership, see the section of this letter entitled, *"For the Tax Matters Partner of the Partnership."*

**2. If you do not agree with the adjustments:**

If you are the TMP of the partnership and want to contest the adjustments in court, you must file a petition within 90 days from the date of this letter. During this 90-day period, no other partner may file a petition for judicial review. You can file your petition for readjustment of partnership items with:

    1. the United States Tax Court;
    2. the United States Court of Federal Claims; or
    3. the District Court of the United States, in the district of the partnership's principal place of business.

A petition filed by the TMP precludes all other actions. If the TMP doesn't file a petition by the 90th day from the date the FPAA was mailed, any partner or any 5 percent group entitled to receive this notice may petition one of these courts. A "5 percent group" includes any group of partners who together have an interest of five percent or more in profits of the partnership. The petition must be filed after the 90th day, but on or before the 150th day from the date the FPAA was mailed to the TMP. If more than one petition is filed in Tax Court, the first petition filed will go forward. All other petitions (even those filed earlier in one of the other courts) will be dismissed. If no one files a petition in Tax Court, the first petition filed in one of the other courts will go forward and subsequent petitions will be dismissed. Petitions filed with the United States Tax Court must be mailed to:

           **United States Tax Court**
           **400 Second Street, NW**
           **Washington, DC 20217**

Attach a copy of this letter to the petition. The time in which you must file a petition with the court is fixed by law and the court cannot consider your case if your petition is filed late. If this letter is addressed to both a husband and wife and both want to petition the Tax Court, both must sign the petition or each must file a separate signed petition.

**Letter 1830 (Rev. 7-2007)**
Catalog Number 61242U

When a partner (including each member of a 5 percent group that files a petition) files a petition in either the appropriate District Court or the Court of Federal Claims, the partner filing the petition must deposit the amount that the partner's tax liability would be increased if the treatment of the partnership items on the partner's return were made consistent with the treatment of partnership items under the FPAA. If you reported the partnership items the way the partnership reported them on its return, you can generally determine the amount to deposit by taking your pro rata share of the partnership adjustments into account in recomputing your tax. You must deposit the appropriate amount with the IRS on or before the day you file your petition.

### 3. If you do nothing:

If a petition for readjustment is not filed in any of the courts listed in this letter, the FPAA becomes final, and we will bill you for any additional tax plus interest that you may owe under the FPAA. You will not be permitted to contest the treatment of the partnership items of the partnership under the FPAA in any refund claim or suit. The law allows the Service to bill you after 150 days from the mailing date of the FPAA to the TMP.

However, if a petition is filed in the Tax Court, and the Tax Court upholds the adjustments in whole or in part, we will not bill you until the Tax Court decision is final.

You may wish to contact the TMP of the partnership or your tax advisor to discuss this matter.

If you have any questions, you can write to the person whose name and address are shown in the heading of this letter. If you write, attach a copy of this letter to help identify your account. Also, include your telephone number and the most convenient time for us to call you in case we need additional information.

If you prefer, you may call the IRS contact person at the telephone number shown in the heading of this letter.

Thank you for your cooperation.

Sincerely,

Timothy M. Conley
Technical Services Territory Manager - Western Area

Enclosures:
Form 870-P/Form 870-PT
Copy of this letter

Letter 1830 (Rev. 7-2007)
Catalog Number 61242U

**FOR THE TAX MATTERS PARTNER OF THE PARTNERSHIP**

If you are the Tax Matters Partner (TMP), you are entitled to make an agreement to bind non-notice partners to the treatment of the partnership items as shown on the enclosed schedule of adjustments. You must add the following statement above the signature blocks on the Form 870-P or Form 870-PT:

"The undersigned Tax Matters Partner is signing this offer on behalf of himself (herself) and all other partners whom he (she) has the authority to bind; a final agreement resulting from the co-signature of the Commissioner of Internal Revenue will be binding on all such other partners."

As the TMP, you may submit a petition, as described above for the partnership on behalf of all partners.

If you have any questions, you can call the IRS contact person at the telephone number shown in the heading of this letter. Thank you for your cooperation.

Letter 1830 (Rev. 7-2007)
Catalog Number 61242U

| Form **870-PT** (Rev. 8-2007) | Department of the Treasury — Internal Revenue Service **Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts** | IN REPLY REFER TO: |
|---|---|---|

| Taxpayer(s) name(s), address and ZIP code: Hatteras Capital Management LLC 20 Dayton Avenue Greenwich, Connecticut 06830 | Name of Partnership: Claston LLC | Tax Year(s) Ended: December 31, 2002 |
|---|---|---|
| | Taxpayer Identifying Number: 11-3665166 | |
| Taxpayer Identifying Number: 04-3710581 | Name of Tax Matters Partner: Hatteras Capital Management LLC | |

### Offer of Agreement to Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts
### &
### Waiver of Restrictions on Assessment for Partnership Items, Penalties, Additions to Tax, and Additional Amounts

Under sections 6224(c) and 7121 of the Internal Revenue Code (IRC) of 1986, the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items as shown on the attached schedule of adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive the restrictions provided by IRC sections 6225(a) and 6213(a) and consent to the assessment and collection of any deficiency attributable to partnership items, penalties, additions to tax, and additional amounts that relate to partnership items, as determined in this agreement, plus any interest provided by law. IRC Section 6651 late filing penalty applies to any late filed returns that are required to report the partnership item adjustments.

This agreement is conditional and will not become effective or final until this agreement form is returned to the Commissioner and is signed on his or her behalf. The one-year extension of the period of limitations on assessments under IRC section 6229(f) will not begin to run until the date the Commissioner's representative signs this form on the Commissioner's behalf. If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

If this part of this agreement form is signed for the Commissioner, the treatment of partnership items and partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items under this agreement will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of partnership items, refund or credit based on any change in the treatment of partnership items or partnership level determinations as to penalties, additions to tax, and additional amounts may be filed or prosecuted.

| Signature of Taxpayer | Date Signed | Phone Number |
|---|---|---|
| Signature of Taxpayer | Date Signed | Phone Number |
| By (Signature and Title) | Date Signed | Phone Number |

| FOR INTERNAL REVENUE USE ONLY | Date accepted for Commissioner | Signature |
|---|---|---|
| | Office | Title |

Catalog Number 57315A          www.irs.gov          (See Instructions for Signing Agreement)          Form **870-PT** (Rev. 8-2007)

## INSTRUCTIONS FOR SIGNING FORM 870-PT

1. Sign the agreement if you wish to agree to the partnership items *and partnership level determinations as to penalties, additions to tax, and additional amounts,* as shown on the attached Schedule of Adjustments. The execution and filing of this offer will expedite the adjustment of tax liability.

2. If a JOINT RETURN OF A HUSBAND AND WIFE was filed and both spouses intend to agree, both spouses should sign Form 870-PT. One spouse may sign as agent for the other if acting under a power of attorney, which, if not previously filed, must accompany this form. The IRS may accept the signature of only one spouse at its discretion. However, the agreement will only be binding on the signing spouse.

3. If the taxpayer is a corporation, the agreement should be signed with the corporate name followed by the signature and title of the officer authorized to sign Form 870-PT.

4. Your attorney or agent may sign for you if this action is specifically authorized by a power of attorney, which if not previously filed, must accompany this form.

5. If this offer is signed by a trust, the agreement must be signed with the trust name, followed by the signature and title of the person authorized to sign on behalf of the trust.

6. For a partner who is a member of a consolidated group and the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning before June 28, 2002, the agreement should be signed by a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for the relevant consolidated return year(s). The common parent corporation signs the agreement in its own name. The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should be displayed in the signature block. See Treas. Reg. § 1.1502-77A(a). However, if the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning on or after June 28, 2002, then a currently authorized officer of the subsidiary corporation should sign the agreement and should do so in the name of the subsidiary corporation. See Treas. Reg. § 1.1502-77(a)(6)(iii). The signature and title of a current officer of the subsidiary corporation, who is authorized to bind the corporation, should be displayed in the signature block.

   For a partner who is the common parent corporation of a consolidated group and the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning before, on or after June 28, 2002, a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for such consolidated return year(s) should sign the agreement in the name of the common parent corporation. See Treas. Reg. § 1.1502-77(a).

7. If the Tax Matters Partner signs this offer, please include the title with the signature.

8. If the Tax Matters Partner is a subsidiary corporation in a consolidated group and the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning before June 28, 2002, then a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for such consolidated return year should sign the agreement on behalf of the Tax Matters Partner. The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should be displayed in the signature block. See Treas. Reg. § 1.1502-77A(a). An authorized officer for the subsidiary corporation should also sign if it, as the Tax Matters Partner, is binding non-notice partners under the agreement. However, if the agreement is for partnership year(s) ending on or before the last day of a consolidated return year beginning on or after June 28, 2002, then a currently authorized officer of the subsidiary corporation should sign the agreement in the name of the subsidiary corporation. See Treas. Reg. § 1.1502-77(a)(3)(v).

NOTE: The submission of this offer by you and the acceptance of the offer for the Commissioner may result in an additional tax liability to you plus interest as provided by law. If the result is a decrease in tax, the amount of the decrease will be sent to you with interest as provided by law.

Department of the Treasury - Internal Revenue Service

**AGREEMENT FOR PARTNERSHIP ITEMS AND PARTNERSHIP LEVEL DETERMINATION AS TO PENALTIES, ADDITIONS TO TAX, AND ADDITIONAL AMOUNTS**

## SCHEDULE OF ADJUSTMENTS

| NAME OF PARTNERSHIP:<br>CLASTON, LLC | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| TAXPAYER IDENTIFYING NUMBER: 11-3665166 | 12/31/2002 | | |
| DETAIL OF ADJUSTMENTS TO ORDINARY INCOME: | | | |
| a. Other income (loss) | 6,003,974.00 | | |
| b. Other deductions | 359.00 | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| Total Adjustments to Ordinary Income | 6,004,333.00 | | |
| Other Adjustments | | | |
| a. Capital contributed during the year | | | |
| (1) Adjustment | (6,166,215.00) | | |
| (2) As reported | 6,166,215.00 | | |
| (3) Corrected | 0.00 | | |
| b. | | | |
| (1) Adjustment | | | |
| (2) As reported | | | |
| (3) Corrected | | | |

Remarks:

Reference Exhibit A attached.

Accuracy Penalties under IRC 6662 are included as a partnership level determination. See Exhibit A for a description of the penalties.

Page      of

| Form **4605-A** | Department of the Treasury - Internal Revenue Service<br>**Examination Changes – Partnerships, Fiduciaries, Small Business Corporations, and<br>Domestic International Sales Corporations** | | |

| Name and Address of Taxpayer<br><br>CLASTON, LLC<br><br><br>20 Dayton Avenue<br>Greenwich, CT  06830 | Employer Identification Number (TIN)<br>11-3665166 | | Form Number:<br>1065 |
| | Person<br>Examination<br>Changes<br>Were<br>Discussed<br>With | Name and Title: | |

| 1. Adjustments to ordinary, distributable net, or taxable income | Tax Period: 12/31/2002 | Tax Period: | Tax Period: |
|---|---|---|---|
|    a.  Other income (loss) | 6,003,974.00 | | |
|    b.  Other deductions | 359.00 | | |
|    c. | | | |
|    d. | | | |
|    e. | | | |
|    f. | | | |
|    g. | | | |
| 2. Total adjustment to ordinary, distributable net, or taxable income | 6,004,333.00 | | |
| 3. Ordinary, distributable net, or taxable income as reported | (6,004,333.00) | | |
| 4. Corrected, ordinary, distributable net, or taxable income | 0.00 | | |
| 5. Other adjustments | | | |
|    a.  Capital contributed during the year | | | |
|      (1) Adjustment | (6,166,215.00) | | |
|      (2) As reported | 6,166,215.00 | | |
|      (3) Corrected | 0.00 | | |
|    b. | | | |
|      (1) Adjustment | | | |
|      (2) As reported | | | |
|      (3) Corrected | | | |

Remarks

Reference Exhibit A attached.

Accuracy Penalties under IRC 6662 are included as a partnership level determination.  See Exhibit A for a description of the penalties.

| Examiner's Signature:<br><br>Rosalee Hofman | Employee ID:<br><br>59-00862 | Office:<br><br>Maitland | Date:<br><br>06/03/2008 |
|---|---|---|---|

RGS Version 8.20.00                                                        Form 4605-A-CG

CLASTON, LLC
Page 1                          EXHIBIT A – Explanation of Items
**CLASTON, LLC**
Final Partnership Administrative Adjustment Letter
Tax Year Ended: **2002**    TIN: **11-3665166**

1. It has not been established that the purported acquisition by CLASTON LLC (hereinafter the "partnership") of built-in-loss assets (and/or asset(s) whose adjusted basis was determined, in whole or in part, with reference to the adjusted basis of such assets) [hereinafter built-in-loss assets or distressed assets], and/or the subsequent actual or deemed sale, exchange and/or write down of such built-in loss assets (hereinafter the "Transactions"), were imbued with economic substance and supported by bona fide business purpose. Accordingly, all claimed losses attributable to the built-in-loss assets are disallowed.

2. It has not been established that the partnership had any basis in the distressed assets. In this regard, it has not been established that the distressed assets were in fact contributed or, if contributed, that the alleged contributing partner had any basis in such assets or that such assets had any value at the time they were contributed and were property within the meaning of Internal Revenue Code Section 723. It is therefore determined that such bases are zero, and all claimed losses with respect to such assets are disallowed.

3. It is has not been established that the partnership incurred any claimed losses attributable to the built-in-loss assets or incurred any other claimed deductions during the taxable year in issue, or that it is otherwise entitled to deduct any claimed losses and/or deductions under any provision of the Internal Revenue Code. Accordingly, all claimed losses and deductions are disallowed.

4. It is has not been established that any claimed losses attributable to the built-in-loss assets resulted from a transaction entered into for profit, and, accordingly, no such losses are allowable under any provision of the Internal Revenue Code, including, but not limited to, Section 165(c)(2).

5. Alternatively, it has not been established that the partnership was formed and availed of for the purpose of carrying on a trade or business by partners and/or for the sharing of profits and losses from such activity. The partnership and Transactions were shams devoid of economic substance for federal tax purposes. All claimed losses and deductions are accordingly disallowed.

6. Alternatively, it has not been established that the form of the Transactions reflects the true substance of the Transactions for federal income tax purposes. The contributions of distressed assets to the partnership are

CLASTON, LLC
Page 2                        EXHIBIT A – Explanation of Items
                                        **CLASTON, LLC**
                            Final Partnership Administrative Adjustment Letter
                            Tax Year Ended: **2002**    TIN: **11-3665166**

treated in substance as never having been contributed to it; such assets
are instead treated as having been sold to the partnership by MPATRN,
LLC in an amount equivalent to the amount for which MPATRN sold a
controlling interest in the partnership through its sale of a controlling
interest in Fulham, LLC, which immediately thereafter acquired a
controlling interest in the partnership.  In the alternative, such assets are
treated in substance as having been purchased from MPATRN by the
partner allegedly purchasing MPATRN's controlling interest in Fulham,
LLC, which immediately thereafter acquired a controlling interest in the
partnership. Such assets are treated thereafter as having been
contributed by the purchasing partner to the partnership. Giving effect to
the substance, not the form, of the Transactions, all claimed losses
attributable to the built-in-loss assets are disallowed.

7. Alternatively, it has not been established that the Transactions should not
   be collapsed under the step transaction doctrine and taxed in accordance
   with their true substance as constituting part of a unified integrated plan in
   which the partnership was utilized as a mere conduit serving no business
   purpose and having no economic substance through which the distressed
   assets were in form allegedly passed to effectuate desired inflated basis in
   the distressed assets and non-economic artificial losses. Giving effect to
   the application of the step transaction doctrine, all claimed losses
   attributable to the built-in-loss assets are disallowed.

8. Alternatively, it has not been established that the partnership was formed
   and/or availed of, in connection with the Transactions, other than for the
   principal purpose to substantially reduce the present value of its partners'
   aggregate federal tax liabilities in a manner inconsistent with the intent of
   Subchapter K of the Internal Revenue Code.  Pursuant to Section 1.701-2 of
   the Income Tax Regulations, it is determined that:

   a. The partnership is disregarded and all actions and activity allegedly
      undertaken and/or conducted by the partnership are treated as
      having been undertaken and/or conducted by its purported partners
      in their individual capacities, not as partners;
   b. All purported contributions of distressed assets to the partnership
      are treated as never having been contributed to it; such assets are
      instead treated as having been sold to the partnership by MPATRN,
      LLC in an amount equivalent to the amount for which MPATRN sold
      a controlling interest in the partnership through its sale of a
      controlling interest in Fulham, LLC, which immediately thereafter
      acquired a controlling interest in the partnership.  In the alternative,

CLASTON, LLC
Page 3

EXHIBIT A – Explanation of Items
**CLASTON, LLC**
Final Partnership Administrative Adjustment Letter
Tax Year Ended: **2002**    TIN: **11-3665166**

such assets are treated in substance as having been purchased from MPATRN by the partner allegedly purchasing MPATRN's controlling interest in Fulham, LLC, which immediately thereafter acquired a controlling interest in the partnership. Such assets are treated thereafter as having been contributed by the purchasing partner to the partnership. Giving effect to the substance, not the form, of the Transactions, all claimed losses attributable to the built-in-loss assets are disallowed;

c. All alleged contributions to the partnership giving rise to claimed basis by the partnership in such assets are treated as not having been made to the partnership; the alleged transfers giving rise to said claimed contributions are instead treated as involving transfers by and among the alleged partners in their individual capacities, not as partners;

d. All claimed losses of the partnership arising from the Transactions are disallowed as not reflecting true economic loss of the partnership and/or any of the purported partners to whom such loss was allocated.

Accordingly, all claimed losses attributable to the built-in-loss assets items are disallowed.

9. Alternatively, if any portion of the claimed basis in the distressed assets is otherwise allowable, it is determined that any portion of the basis and related loss claimed for the distressed assets that results from, or otherwise relates to, the excess of basis over the fair market value (FMV) of such assets at the time the same were allegedly contributed to the partnership, should be allocated to the contributing partner, under the authority of Section 482 of the Internal Revenue Code.

10. Alternatively, if any portion of any claimed loss attributable to the distressed assets is otherwise allowable, it is determined that with regard to any portion of the loss recognized on the actual or deemed sale or exchange of the distressed assets that is attributable to the excess of basis over FMV of the distressed assets at the time such assets were contributed to the partnership, the allocation of any of such loss to the U.S. partners is unreasonable, and that portion of such loss should be allocated to the alleged partners that purportedly contributed the distressed assets, in accordance with the authority of Section 1.704-3(a)(8)and(10) of the Income Tax Regulations. Accordingly, in the alternative, all claimed losses

CLASTON, LLC
Page 4                    EXHIBIT A – Explanation of Items
                              **CLASTON, LLC**
                  Final Partnership Administrative Adjustment Letter
                      Tax Year Ended: **2002**    TIN: **11-3665166**

attributable to the distressed assets should be allocated to the partners
that contributed the distressed assets.

11. Alternatively, if any portion of any claimed losses attributable to the
    distressed assets is otherwise allowable, it has not been established that
    the character of such losses was ordinary, as claimed, as opposed to
    capital.

12. Alternatively, it has not been established that the partnership's activity with
    respect to the distressed assets qualifies as an activity of trading personal
    property for the account of its partners under Treas. Reg. Sec. 1.469-
    1T(e)(6).

13. Alternatively, claimed losses attributable to any alleged diminution in the
    value of the Brazilian Real (BRL) are not allowable under Internal Revenue
    Code Section 988, as it has not been established that the partnership
    incurred such losses in the amounts claimed, or otherwise, during the
    taxable year(s) in issue.

CLASTON, LLC
Page 5                    EXHIBIT A – Explanation of Items
                          **CLASTON, LLC**
                Final Partnership Administrative Adjustment Letter
                Tax Year Ended: **2002**    TIN: **11-3665166**

**Penalties (applicable to all adjustments)**

1.   The adjustments to the partnership items determined herein are attributable to a tax shelter within the meaning of Internal Revenue Code Section 6662(d)(2)(C)(ii).  The partnership and its purported partners/members had, as a significant purpose, the avoidance or evasion of federal income tax, lacked substantial authority for the positions taken, and did not have a reasonable belief that those positions were more likely than not the correct treatment of such items.

2.   It is also determined that all of the underpayments of tax resulting from the adjustments of partnership items made herein are attributable to (1) a substantial understatement, (2) a gross valuation misstatement, and/or (3) negligence or disregard of rules or regulations.

3.   In addition, it is determined that the partnership and its partners did not have reasonable cause and good faith for any of the resulting underpayments, or that any other exceptions to the accuracy-related penalty apply.

4.   It is therefore determined that the accuracy-related penalty under Section 6662 of the Internal Revenue Code applies to all under-payments of tax attributable to adjustments of partnership items determined herein.  The components of the accuracy-related penalty are imposed as follows:

   A.  a 40 percent penalty is imposed on any portion of the underpayment that is attributable to a gross valuation misstatement as provided by Sections 6662(a), 6662(b)(3), 6662(e), and 6662(h) of the Internal Revenue Code.

   B.  a 20 percent penalty is imposed on any portion of the underpayment attributable to negligence or disregard of rules and regulations as provided by Sections 6662(a), 6662(b)(1), and 6662(c) of the Internal Revenue Code.

   C.  a 20 percent penalty is imposed on the portion of the underpayment attributable to the substantial understatement of income tax as provided by Sections 6662(a), 6662(b)(2), and 6662(d) of the Internal Revenue Code.

   D.  a 20 percent penalty is imposed on the underpayment attributable to the substantial valuation misstatement as provided by Sections 6662(a), 6662(b)(3) and 6662(e) of the Internal Revenue Code.

**Sunset Holding, LLC**
PMB 29, Box 10001
Saipan, MP 96950

September 10, 2008

REVENUE SERVICE
COMPLIANCE AREA 18

SEP 10 2008

TERRITORY GROUP
Glendale, CA 90245

**VIA MESSINGER**

Ted Meyer, Territory Manager
Internal Revenue Service
225 West Broadway, 2d Floor
Glendale, CA 91204
**Attn: Eileen Minassian**

RE:   *Claston, LLC, by and through Sunset Holdings, LLC v. United States of America;*
      Tax Year 2002;
      IRS Forms 1040 and 1065;
      Deposit Pursuant to 26 U.S.C. 6226(c) and 6603(d)

Dear Mr. Meyer:

I am the sole member-manager of Sunset Holdings, LLC, the TMP of Claston, LLC ("Claston"). On or about June 17, 2008, the Internal Revenue Service issued a Notice of Final Partnership Administrative Adjustment ("FPAA") to Claston. A copy of this FPAA is attached.

Pursuant to Section 6226(c) of the Internal Revenue Code ("IRC"), I am submitting check number 36287 in the amount of $1,500.00, representing the good faith estimate of an amount in excess of the *pro rata* liability of Sunset Holding, LLC.

In the event that it is determined that this deposit exceeds what was necessary, it is requested that the deposit be identified as a deposit eligible for interest under IRC § 6003(d) and Revenue Procedure 2005-18, 2005-13 I.R.B. The Taxpayer does not concede liability and nothing contained herein should be construed as a concession of any tax liability

In the alternative, if it is ever determined that any portion of such deposit did not qualify as a deposit made pursuant to Section 6003, such portion should be treated as a deposit in the nature of a cash bond.



Ted Meyer
September 10, 2008
Page 2


Please date-stamp the copy of the attached check and the copy of this letter for return to me via the messenger delivering this letter.

Sincerely,

Dave Jensen
Sole Member
Sunset Holding, LLC


DJ/jd

Enclosures

**LAW OFFICES**
**HOCHMAN, SALKIN, RETTIG,**
**TOSCHER & PEREZ, P.C.**
9150 WILSHIRE BLVD., STE. 300
BEVERLY HILLS, CA 90212
PH. 310-281-3200

UNION BANK OF CALIFORNIA
BEVERLY HILLS PRIVATE BANKING
BEVERLY HILLS, CA 90212
16-49-1220

9/9/2008

PAY TO THE
ORDER OF   U. S. Treasury                                           *****$   1,500.00   ***

                    *******************One Thousand, Five Hundred & No/100 Dollars                    DOLLARS

        U. S. Treasury

MEMO

⑈036287⑈ ⑆122000496⑆ 0320017408⑈

LAW OFFICES HOCHMAN, SALKIN, RETTIG, TOSCHER & PEREZ, P.C.                    36287

| Invoice Date | Invoice No. | Description | Amount |
|---|---|---|---|
| 9/9/2008 | | Tax Payment For Baldwin | 1,500.00 |

|  |  |  |  |
|---|---|---|---|
|  |  | Total: | 1,500.00 |